IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

KIRK MACKEY,                              )
                                     )
                 Plaintiff,          )
                                     )      CIVIL ACTION
vs.                                    )
                                     )      Case No. 4:24-CV-01626
MADISONVILLE COMMONS, LLC,     )
                                     )
               Defendant.     )

## COMPLAINT

COMES NOW, KIRK MACKEY, by and through the undersigned counsel, and files this, his Complaint against Defendant, MADISONVILLE COMMONS, LLC, pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG"). In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1.      This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq*., based upon Defendant's failure to remove physical barriers to access and violations of Title III of the ADA.

## PARTIES

2.      Plaintiff, KIRK MACKEY (hereinafter "Plaintiff") is, and has been at all times relevant to the instant matter, a natural person residing in Houston, Texas (Harris County).

3.      Plaintiff is disabled as defined by the ADA.

4.      Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking and standing.

5.      Plaintiff uses a wheelchair for mobility purposes.

6.      In addition to being a customer of the public accommodation on the Property, Plaintiff is also an independent advocate for the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA.  His motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to demonstrate the plausibility of Plaintiff returning to the Property once the barriers to access identified in this Complaint are removed in order to strengthen the already existing standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property. ("Advocacy Purposes").

7.      Defendant,        MADISONVILLE        COMMONS,        LLC        (hereinafter "MADISONVILLE COMMONS, LLC"), is a Texas limited liability corporation that transacts business in the State of Texas and within this judicial district.

8.      Defendant, MADISONVILLE COMMONS, LLC, may be properly served with process for service via its Registered Agent, to wit:  c/o Malachite Group of Texas, Inc., Registered Agent, 1955 W. TC Jester Blvd., Houston, TX  77008.

**FACTUAL ALLEGATIONS**

9.      On or about April 3, 2024, Plaintiff intended to be a customer at "Chavez Mexican Cafe," a restaurant located at 2557 Gessner Rd., Houston, TX  77080, referenced herein as "Chavez Mexican Café".  Attached is a receipt documenting Plaintiff's purchase.  *See* Exhibit 1.  Also attached is a photograph documenting Plaintiff's visit to the Property.  *See* Exhibit 2.

2

10.     Defendant, MADISONVILLE COMMONS, LLC, is the owner or co-owner of the real property and improvements that Chavez Mexican Cafe is situated upon and that is the subject of this action, referenced herein as the "Property."

11.     Plaintiff lives 4 miles from the Property.

12.     Given the close vicinity of the Property to Plaintiff's residence, Plaintiff is routinely travelling by the Property on at least a monthly basis.

13.     Plaintiff's access to the business(es) located 2557 Gessner Rd., Houston, TX 77080, Harris County Property Appraiser's property identification number: 0951230000011 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of his disabilities, and he will be denied and/or limited in the future unless and until Defendant, MADISONVILLE COMMONS, LLC, is compelled to remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

14.     Defendant, MADISONVILLE COMMONS, LLC, as property owner, is responsible for complying with the ADA for both the exterior portions and interior portions of the Property.  Even if there is a lease between Defendant, MADISONVILLE COMMONS, LLC and the tenant allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only between the property owner and the tenant and does not abrogate the Defendant's independent requirement to comply with the ADA for the entire Property it owns, including the interior portions of the Property which are public accommodations.  *See* 28 CFR § 36.201(b).

3

15.     Plaintiff has visited the Property twice before as a customer and advocate for the disabled.  Plaintiff intends to revisit the Property as a customer of Chavez Mexican Café, but also intends to visit King Dollar Store and Pho Saigon Restaurant, within six months after the barriers to access detailed in this Complaint are removed and the Property is accessible again.  The purpose of the revisit is to be a return customer, to determine if and when the Property is made accessible and for Advocacy Purposes.

16.     Plaintiff intends on revisiting the Property to purchase goods and/or services as a return customer living in the near vicinity as well as for Advocacy Purposes but does not intend to re-expose himself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous and continuing barriers to access.

17.     Plaintiff travelled to the Property as a customer and as an independent advocate for the disabled, encountered the barriers to access the Property that are detailed in this Complaint, engaged those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access present at the Property.

18.     Although Plaintiff did not personally encounter each and every barrier to access identified in Plaintiff's Complaint, Plaintiff became aware of all identified barriers prior to filing the Complaint and because Plaintiff intends on revisiting the Property as a customer and advocate for the disabled within six months or sooner after the barriers to access are removed, it is likely that despite not actually encountering a particular barrier to access on one visit, Plaintiff may encounter a different barrier to access identified in the complaint in a subsequent visit as, for example, one accessible parking space may not be available and he would need to use an alternative accessible parking space in the future on his subsequent visit.  As such, all barriers to

4

access identified in the Complaint must be removed in order to ensure Plaintiff will not be exposed to barriers to access and legally protected injury.

19.     Plaintiff's inability to fully access the Property and the stores within in a safe manner and in a manner which inhibits the free and equal enjoyment of the goods and services offered at the Property, both now and into the foreseeable future, constitutes an injury in fact as recognized by Congress and is historically viewed by Federal Courts as an injury in fact.

<u>COUNT I</u>
<u>VIOLATIONS OF THE ADA AND ADAAG</u>

20.     On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq.*

21.     Congress found, among other things, that:

(i)     some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii)    historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii)   discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)    individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)     the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is

justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

22.     Congress explicitly stated that the purpose of the ADA was to:

(i)     provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)    provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

        * * * * *

(iv)    invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

23.      The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

24.     The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

25.     The Property is a public accommodation and service establishment.

26.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

27.     Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq.*; 28 C.F.R. § 36.508(a).

28.     The Property must be, but is not, in compliance with the ADA and ADAAG.

29.     Plaintiff has attempted to, and has to the extent possible, accessed the Property in his capacity as a customer at the Property as well as an independent advocate for the disabled, but could not fully do so because of his disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

30.     Plaintiff intends to visit the Property again in the very near future as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of his disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

31.     Defendant, MADISONVILLE COMMONS, LLC, has discriminated against Plaintiff (and others with disabilities) by denying his access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

32.     Defendant, MADISONVILLE COMMONS, LLC, will continue to discriminate against Plaintiff and others with disabilities unless and until Defendant, MADISONVILLE

COMMONS, LLC, is compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

33.     A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed, or was made aware of prior to the filing of this Complaint, that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

     i.     On the north side of the Property, the access aisle to the two accessible parking spaces is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

    ii.    On the north side of the Property, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking spaces in violation of Section 406.5 of the 2010 ADAAG Standards.  This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

   iii.   On the north side of the Property, one of the two accessible parking spaces is missing an identification sign in violation of Section 502.6 of the 2010

ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

iv. On the north side of the Property, the accessible ramp side flares have a slope in excess of 1:10 in violation of Section 406.3 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because steep slopes on ramp side flares could cause the wheelchair to tip over and injure Plaintiff.

v. The accessible parking space is missing an identification sign in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

vi. The access aisle to the accessible parking space is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

vii. The accessible curb ramp is improperly protruding into the access aisle of the accessible parking space in violation of Section 406.5 of the 2010 ADAAG Standards.  This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

viii. The Property has an accessible ramp leading from the accessible parking space to the accessible entrances with a slope exceeding 1:10 in violation of

9

Section 405.2 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because when ramps are too steep (more than 1:12) it requires too much physical arm strain to wheel up the ramp and increases the likelihood of the wheelchair falling backwards and Plaintiff being injured.

ix.   The accessible ramp side flares have a slope in excess of 1:10 in violation of Section 406.3 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because steep slopes on ramp side flares could cause the wheelchair to tip over and injure Plaintiff.

x.   Due to the extreme slope of the accessible ramp servicing the accessible parking space, the Property lacks an accessible route from the accessible parking space to the accessible entrance of the Property in violation of Section 208.3.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property.

xi.   In front of Chavez Mexican Café, one of the three accessible parking spaces does not have a marked access aisle in violation of Section 502.3.3 of the 2010 ADAAG standards. This barrier to access makes it nearly impossible for an individual in a wheelchair to enter and exit their vehicle at this accessible parking space due to the close presence of parked vehicles on either side of the accessible parking space not providing enough room for the wheelchair, this eliminates the accessible route from this accessible parking space.

xii.   In front of Chavez Mexican Café, one of the three accessible parking spaces does not have a marked access aisle, due to the lack of an access aisle, when a vehicle is parked in the accessible parking space and there are cars parked on either side of the accessible parking space, there lacks adequate space for Plaintiff to enter and exit their vehicle.  As a result, the Property lacks an accessible route from this accessible parking space to the accessible entrance of the Property in violation of section 208.3.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property.

xiii.   In front of Chavez Mexican Café, the access aisle to two of the accessible parking spaces is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

xiv.   In front of Chavez Mexican Café, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking spaces in violation of Section 406.5 of the 2010 ADAAG Standards.  This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

xv.   In front of Chavez Mexican Café, the Property has an accessible ramp that lacks finished edges or edge protection and/or is otherwise in violation of

11

Section 405.9 of the 2010 ADAAG standards. This barrier to access would expose Plaintiff to increased risk of injury for if the wheelchair should fall of the side edge of the ramp, the lack of edge protection would likely cause Plaintiff to tip and incur injury.

xvi.     In front of Chavez Mexican Café, there are three accessible parking spaces that are missing identification signs in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

xvii.    At Chavez Mexican Café, due to an approximate one-inch vertical rise at the accessible entrance, the maneuvering clearance of this accessible entrance is not level (surface slope in excess of 1:48) in violation of Section 404.2.4.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access this unit of the Property since it is often necessary for individuals in wheelchairs to need to use their hands to both wheel through the doorway and keep the door open with another hand.  When the maneuvering clearance is not level, this ordinarily difficult process is made even more difficult by the inappropriately higher slope.

xviii.   In front of King Dollar, the access aisles to the four accessible parking spaces are not level due to the presence of an accessible ramp in the access aisles in violation of Section 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

12

xix.   In front of King Dollar, the accessible curb ramps are improperly protruding into the access aisles of the accessible parking spaces in violation of Section 406.5 of the 2010 ADAAG Standards.  This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

xx.   In front of King Dollar, the accessible ramps have side flares with a slope in excess of 1:10 in violation of Section 406.3 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because steep slopes on ramp side flares could cause the wheelchair to tip over and injure Plaintiff.

xxi.   In front of King Dollar, there are two accessible parking spaces that are missing identification signs in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

xxii.   In front of King Dollar, the Property has two accessible ramps leading from the accessible parking spaces to the accessible entrances with slopes exceeding 1:12 in violation of Section 405.2 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because when ramps are too steep (more than 1:12) it requires too much physical arm strain to wheel up the ramp and increases the likelihood of the wheelchair falling backwards and Plaintiff being injured.

xxiii.    Across the vehicular way from King Dollar, there is one accessible parking space that does not have a marked access aisle in violation of Section 502.3.3 of the 2010 ADAAG standards. This barrier to access makes it nearly impossible for an individual in a wheelchair to enter and exit their vehicle at this accessible parking space due to the close presence of parked vehicles on either side of the accessible parking space not providing enough room for the wheelchair, this eliminates the accessible route from this accessible parking space.

xxiv.    Across the vehicular way from King Dollar, there is one accessible parking space that does not have a marked access aisle, due to the lack of an access aisle, when a vehicle is parked in the accessible parking space and there is a car parked on one side of the accessible parking space but on the other side there is no access aisle and instead opens into a traffic lane, there lacks adequate safe space for Plaintiff to enter and exit their vehicle.  As a result, the Property lacks an accessible route from this accessible parking space to the accessible entrance of the Property in violation of section 208.3.1 of the 2010 ADAAG standards. This barrier to access would make it difficult and dangerous for Plaintiff to access the units of the Property.

xxv.    In front of King Dollar, due to a policy of not having parking stops for the parking spaces directly in front of the exterior access route, cars routinely pull up all the way to the curb and the "nose" of the vehicle extends into the access route causing the exterior access route to routinely have clear widths below the minimum thirty-six (36") inch requirement specified by Section 403.5.1 of

14

the 2010 ADAAG Standards. This barrier to access would make it dangerous and difficult for Plaintiff to access exterior public features of the Property as there is not enough clear width for Plaintiff's wheelchair.

xxvi.   In front of King Dollar, due to a policy of not having parking stops for the parking spaces directly in front of the exterior access route, cars routinely pull up all the way to the curb and the "nose" of the vehicle extends into the access route as a result, in violation of Section 502.7 of the 2010 ADAAG Standards, parking spaces are not properly designed so that parked cars and vans cannot obstruct the required clear width of adjacent accessible routes. This barrier to access would make it dangerous and difficult for Plaintiff to access exterior public features of the Property as there is not enough clear width for Plaintiff's wheelchair.

xxvii.   In front of King Dollar, due to the location of the shopping cart coral, there are publicly accessible areas of the Property having accessible routes with clear widths below the minimum 36 (thirty-six) inch requirement as required by Section 403.5.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the rest of the units of the Property as Plaintiff's wheelchair would not be able to get past this barrier.

xxviii.   In front of King Dollar, due to the location of the shopping cart coral, the Property lacks an accessible route connecting accessible facilities, accessible elements and/or accessible spaces of the Property in violation of Section 206.2.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access public features of the Property.

xxix.    Nearest Unit 2543, the access aisle to the two accessible parking spaces is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

xxx.    Nearest Unit 2543, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking spaces in violation of Section 406.5 of the 2010 ADAAG Standards.  This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

xxxi.    Nearest Unit 2543, the two accessible parking spaces are missing identification signs in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

xxxii.    Defendant fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

34.     The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

35.     Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

36.     The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

37.      All of the violations alleged herein are readily achievable to modify to the Property into compliance with the ADA.

38.     Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

39.     Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendant, MADISONVILLE COMMONS, LLC, has the financial resources to make the necessary modifications.  According to the Property Appraiser, the collective Appraised value of the Property is $2,206,736.00.

40.     The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendant has available to it a $5,000.00 tax credit and up to a $15,000.00 tax deduction from the IRS for spending money on accessibility modifications.

41.     Upon information and good faith belief, the Property has been altered since 2010.

42.     In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

43.     Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant, MADISONVILLE COMMONS, LLC, is required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

44.     Plaintiff's requested relief serves the public interest.

45.     The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendant, MADISONVILLE COMMONS, LLC.

46.     Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendant, MADISONVILLE COMMONS, LLC, pursuant to 42 U.S.C. §§ 12188 and 12205.

47.     Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendant, MADISONVILLE COMMONS, LLC, to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)     That the Court find Defendant, MADISONVILLE COMMONS, LLC, in violation of the ADA and ADAAG;

(b)     That the Court issue a permanent injunction enjoining Defendant, MADISONVILLE COMMONS, LLC, from continuing their discriminatory practices;

(c)     That the Court issue an Order requiring Defendant, MADISONVILLE COMMONS, LLC to (i) remove the physical barriers to access and (ii) alter the Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d)     That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses and costs; and

(e)     That the Court grant such further relief as deemed just and equitable in light of the circumstances.

Dated: April 30, 2024

Respectfully submitted,

/s/ Douglas S. Schapiro
Douglas S. Schapiro, Esq.
Southern District of Texas ID No. 3182479
The Schapiro Law Group, P.L
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com

Attorney for Plaintiff